We'll hear the next case, the last case to be argued, Bunnell v. Haghighi. Thank you. Good morning, Your Honors. May it please the Court, Dean Cho, Counsel for the Plaintiffs' Appellants Kathleen and Dennis Bunnell. As Your Honors may know, this case arises out of an uncompleted residential real estate transaction and the dispute concerns the deposit paid by the respondent buyer. The decision, order, and judgment of the lower court were premised on its credibility determination that the buyer exercised good faith in attempting to get the mortgage to purchase the premises. However, in doing so, the lower court gave disregard or gave extremely short shrift to undisputed documentary evidence and admissions made by the buyer in this matter, which show he did not comply with the conditions. The principal question was whether the defendant was acting in good faith, yes? And that's inherently a factual question? No, Your Honor, because actually under the terms of the expressed terms of the negotiated financing contingency clause, there are certain provisions. First of all, the debt What did he do that, what evidence is there that he acted in bad faith? There are quite a few things. Actually, as even supported by the magistrate judge, awarded sanctions in this matter, $15,000, which was affirmed by the district court in its entirety. The bad faith is a couplefold. Number one, after signing the agreement to purchase the premises from my clients, but before he filed his mortgage application, submitted his mortgage application for the premises, the respondent contracted to buy another property. But there was nothing that prevented him from doing that, right? I mean, there was nothing, there was no prohibition that he couldn't buy a second property so long as he could fulfill the terms of the mortgage contingency on the one that he had contracted for. No, but Your Honor, there were a couple of things. First of all, that exhibit bad faith. Number one is, he didn't disclose it to my clients. Number two, he didn't disclose it to my clients. He didn't disclose it to my clients. He didn't even disclose it to the mortgage lender. Now, he signed it, you know, undisclosed debt acknowledgment in connection with his mortgage application, saying he's revealed all his, you know, any debts that he might be under. And the undisclosed debt acknowledgment actually went so far to say, as if you represent this and sign this, which he did, and it's not true, it constitutes mortgage fraud, it's a felony. But why was it a debt to have signed a contract to purchase that was contingent upon obtaining financing? Because he actually, first of all, also, what he did was. Was it a debt? Yes, it was a debt, because he submitted another mortgage application simultaneously with the premises. Why was that, why is that a debt? Because you, it's the testimony from the mortgage broker, it was undisputed, that you have created, the undisclosed debt acknowledgment refers to contingent liabilities as well. Not only actual liabilities, but contingent liabilities. Also, he understated his assets because, in his mortgage application, because he did not include the $125,000 down payment he made. But the Flagstar, so as I understand it, Landmark was the mortgage broker who placed the application with Flagstar. And he, the defendant, submitted two applications, actually, it's the, yeah, the defendant, FLE, simultaneously with exactly the same information on them. So they were not different applications. And Flagstar, which was chosen by Landmark, not by the FLE, declined his mortgage, not on the basis of anything having to do with debt, but on four bases. The first of which was that he hadn't owned a prior residence in the last three years. The second of which was his credit file was too thin, meaning there wasn't enough activity. And then a couple of others. But none of the four had to do with that issue. Your Honor, the undisputed testimonial evidence was that those checkoff marks are not exclusive. They can be other grounds. And they were, in fact, undisputed documentary evidence that he never obtained, never ordered, nor obtained an appraisal for the premises. Your arguments are reasonable. But that's not the test. I mean, the judge heard the witnesses. Maybe we might have come out a little bit differently. But for us to reverse, we've got to be convinced that his findings are clearly erroneous? Yes, Your Honor. Tell us why his findings are clearly erroneous. The lower court made the following errors. First of all, he, in his decision, Judge Block excluded consideration of the purchase of the premises, the false mortgage application submitted to Landmark. He said he didn't go to the merits of the case. Now, Judge Gold, in the sanctions motion, expressly said that that was a highly – that conduct was highly, highly material as to the defendant respondent's good faith. Judge Block adopted that report and recommendation in its entirety, expressly adopted in its entirety, thereby, in fact, contradicting himself on that very issue. And the terms also, it's important to state, the terms were negotiated in a rider, the Finance and Contingency Clause. It says that, as a condition, that the denial of the mortgage application has to be without fault on the part of the buyer. Here, there are numerous faults. Actually, in fact, we had submitted documents from Flagstar Bank which shows the receipt of, you know, the partnership returns of the defendants. This was not submitted. It's undisputed. We have documentary evidence cited in the record that the submission of the appraisal fee was required at application, and the respondent admits he did not do so. Now, his expert comes up and says, you know, it wasn't required until after he was approved. But that's not what the document says. Landmark's own document says you have to submit this fee upon application. And furthermore, just anyone's practical experience who's ever bought a house knows that you cannot get approved without a preexisting appraisal, because that obviously goes to the centrality of the bank's loan being secure, adequately secure. And so you have a contradiction. Also, you have, admittedly, the defendant engaged in mortgage fraud by submitting false documents, falsely certified. The mortgage application itself says that he's going to be disclosing any actual or contingent debts. He committed mortgage fraud. He admits he didn't do it. He admits he did it knowingly. That is just fundamentally incompatible, you know, the commission of mortgage fraud with acting in good faith. Judge? You saved three minutes for rebuttal. Yes. All right. We'll hear from the other side. May it please the Court, good morning, Your Honors. I'm Daniel Alliance, and I represent Farzad Hariri, who's here today. Everything that has come from my opponent's mouth are speculation. My guy applied in good faith, and that's a finding of fact. And as Your Honors have stated, the clearly erroneous standard is applicable. Let me ask you about the good faith and the finding of fact. When you look at the mortgage clause and you look at it in its entirety, it's got two aspects to it, one of which has got several requirements of diligence, truthfulness, and the application has to be proper. And then after that, there's a clause which says that if the buyer is without fault, then the deposit may be returned. But what is your support for the judge's determination that diligence, truthfulness, and propriety are the equivalent of good faith, or are those, in fact, separate requirements, which there should have been separate factual findings with respect to? Well, Your Honor, there was a trial, and my client had testified that he truly desired to purchase this property. It was his first choice property. And we also had to go through the steps of subpoenaing the independent mortgage broker, who my client had never met in person even. He didn't even know this lady. We had to go through all of these steps to subpoena this mortgage broker. This was not our expert witness. This was an independent mortgage broker who came and testified before the judge, before Judge Block, and stated that my guy had put in a truthful and proper and complete application for this mortgage and that he wanted to buy the Bunnells home. What I'm asking is a little bit different. It's really about contract interpretation, that the court starts off his opinion talking about good faith and makes some findings relating to good faith. The contract reads in terms of a series of separate contractual requirements, which may or may not amount under the umbrella of good faith. My question to you is how does one take those separate contractual requirements and extrapolate from that that they only mean, quote, good faith? I don't know how to answer your question. Maybe I don't understand your question. I know that my client applied for the mortgage. He administered good faith. He wanted to buy the property. He still wants the property. This property was perfect for him. The fact that the Bunnells were able to sell it for the same purchase price of $1.25 million right away just proves how desirable of a property it was. My client to this day has not even moved into the other property that he purchased. That new property required so much work and renovation that he's put in so much money into it. He wanted the Bunnells home, the Greenway North home. It was move-in ready. How was he applying to buy two places? So this is the way it turned out. He saw the Greenway property. That's the Bunnells home. He wanted this property. His profession is a doctor. It's on a main road. It's perfectly set up for him to practice his profession out of the property. And it's in move-in condition. So once he goes into contract for Greenway North, the Bunnells home, he contacts the mortgage broker. And the mortgage broker says, hey, this contract that you executed requires you to apply for a $750,000 mortgage. That's a jumbo mortgage. It's not even a Fannie Mae conforming loan. It's a very, very stringent loan application and loan dollar amount. This is a young guy. He has no prior real estate experience. He doesn't know what's going on. Based on those dim prospects that he received, he understood that he would still have to apply, and he honestly hoped that he would still get approved for the Greenway property. But another property came along. It was his second-choice property, and he applied for that property as well. But wouldn't that clearly reduce his chances of getting the jumbo loan by taking on another contingent obligation? Your Honor, absolutely not. The mortgage broker purposely submitted the applications to two separate banks so that neither bank would know about the pending application. At the end of the day, if he would have gotten approved for both properties, he would have gone through with both properties. He has a mother, and the mother would have, at the end of the day, supported him and provided the funds for him to close. But he didn't want to go ahead. Doesn't he have an obligation to disclose the contingent obligation to be undertaken? The contract doesn't require him to disclose another contract of sale. Your adversary says it requires disclosure of contingent obligations. At the time when he puts in an application, there is no – so the question I guess you're asking is whether buying something else is a contingent. It's not a debt, Your Honor. It's just there's a mortgage commitment. Is he obliged to take the loan if he's approved? Or can he be approved and then say, no, I don't want it, I changed my mind on the paperwork? Between him and the bank? Yeah. You know, if you're approved, you don't have to get the loan from the bank. But our issue at hand is whether or not he would have had to close on the Bunnells home, and he would have had he gotten the loan. I understand that. But in terms of the contingent debt, if he had been approved on both, he could have purchased both or he could have said to the bank, I don't want the loan. He could – if he would have gotten approved for both loans, he would have closed on both. Was there a mortgage contingency clause in the second contract? Yes, Your Honor. And that mortgage, Your Honor, was a completely different mortgage. That was for a $400,000 loan. That's a Fannie Mae conforming loan. The $750,000 loan is a jumbo, non-conforming, non-Fannie Mae loan. It's not something that can be flipped over to Fannie Mae. It has much stringent requirements. And Leah Paskus, the independent mortgage broker, had testified in great length on the differences. She had stated something like they're not apples and oranges or they're Mars and Earth. They're completely different. He still wants the Bunnels home to this very day. I promise you that through all of my conversations with this gentleman. He's a nice guy and he's a young guy and he exerted his good faith effort. And he deserves to have his money returned to him promptly. That's the whole reason why the mortgage commitment contingency clause is in the contract in the first place. The fact that the Bunnels executed a contract with a $750,000 mortgage commitment contingency clause, so be it. That's how it was. And that's how it is. All right. Thank you. Your Honor, a couple of points. I would also want to mention that the district judge in his own decision and in his comments at trial explicitly relied on irrelevant considerations in reaching his decision. He basically said that my clients were greedy because they hadn't been harmed at all. Because two years later, they managed to purchase another premises. Not only was that incorrect because they had to pay additional ACA surcharge, and this is a capital gain that accrued over 60 years, a tremendous amount. They also had an unoccupied house for two years when they tried to sell it. They incurred significant damage. But even more importantly, under controlling authority in New York State law, when you have a liquidated damages clause, whether or not you didn't lose any money or even made more money subsequently is irrelevant. It's erroneous as a matter of law to consider that. And the judge cited that in his decision as one of the grounds for his justification, and his own comments during the trial said that was his main motivation. He basically said to the plot the district judge. Mr. Cho, I think I understand that, but I wanted to come back for a minute to you. You said that there was a direct contradiction between what the district judge did in his first opinion and then in his opinion adopting the decision on sanctions with respect to the magistrate judge, which I recall to do largely with the filing of the list pendants, but it also went further. Could you highlight for us, please, the specific contradiction that you were referring to? Well, what happened here was the specific contradiction was this. In his counterclaims seeking return of the deposit, the defendant said clearly, and it was sworn to, it was a verified pleading by the defendant himself, saying that he only contracted to buy the alternate premises after his mortgage application had been denied. Now, we sought discovery from the defendant. They refused it. The magistrate judge ordered him to produce it. He didn't. We sought third-party discovery. He tried to obstruct it. This is all part of the record. And Judge Gold's comments were recorded. Was that the August date, the August 27th?  August 12th. Yeah, August 12th. He did not — he contracted to buy it even before he submitted the mortgage application for our — my client's premises. He lied about it. I brought a rule — But I just want to — if you could really just get right to the point and focus on where the district judge said one thing in his initial decision and where he essentially said something else in a different action. Actually, in the magistrate judge's report and recommendation on page 8, which appears in Supplemental Appendix 8, it says, Now, that's a very, very prominent finding in the decision. And what happens is Judge Gold, the defendant, in their objection, do not take any issue with any of the factual findings or any of those legal findings by Judge Gold. And Judge Block, in his memorandum in order on the sanctions motion, expressly affirms it in its entirety. So he basically acknowledged that that information was highly material to the good faith. And now his decision rendering judgment for the defendant said he excluded that information, that it didn't go to the merits. He didn't consider it. There is a clear contradiction here. I mean, Judge Gold had a lot of experience in this matter, spent a lot of the time with the defendant at 10 court appearances before him. He, after this falsehood came to light, he strongly suggested to the defendant and defendant's counsel that they just, you know, surrender the deposit, that he saw really basically no issue, you know, as to the bad faith, that this was clear bad faith on their part, suggested the defendant's counsel to avoid possible sanctions, that he withdraw his counsel for the defendant. Judge Block takes no issue with this. Why don't you finish up? Okay. And I would also say there's a fundamental inconsistency between the story that they're saying now and what happened before. They're saying they always wanted the property, but the — and still want the property. But the testimony of the mortgage broker, his witness was that the application was a marginal one for the $750,000. Now, if it was truly marginal, adding another $850,000 application — We have your points. Thank you. We will reserve decision. The final case is on submission. We have some motions. They are on submission as well. I'll ask the clerk to adjourn. Court is adjourned.